### LEE FOO v. NAGLE, Commissioner of Immigration.
### No. 6614.

Circuit Court of Appeals, Ninth Circuit.
May 16, 1932.

Joseph P. Fallon, of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and L. E. Kilkenny, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges.

WILBUR, Circuit Judge.

This appeal is taken from an order of the District Court denying petition for writ of habeas corpus. Appellant, Lee Foo, claims to be the son of Lee Wot, a native-born citizen of the United States. Upon application for admission into the United States, Lee Foo, his alleged father, Lee Wot, also known as Lee Shew Nom, and his alleged cousin, Lee Wah, were examined in detail as to family life and the home in Ping On village, China. The testimony of the three witnesses agreed in the main as to many intimate details of the home, family life, relationships, ancestral graves, etc. However, during the course of the examination certain discrepancies between the testimony of the witnesses were developed, and on the basis of these discrepancies the immigration authorities rejected the testimony as to the relationship between the alleged father and son, and held that the applicant had not sustained the burden of proof upon him to show that he is a citizen of the United States, and for that reason directed that he be returned to China. While he was detained for that purpose, he instituted these proceedings.

Some of the alleged discrepancies in regard to the ancestral graves, tombstones, etc., are not of sufficient consequence to justify setting forth in an opinion. On the other hand, the alleged father testified that his oldest son was married, that he lived in the family home in the Ping On village, and that his marriage name was Lee Ngoot Loy, and his other name was Lee Fong Nai. The appellant testified that his oldest brother had no marriage name, and that he knew this to be so because he lived in the home with him. A similar situation arose with reference to the marriage name of the nephew of the alleged father, living in the adjoining house in the Ping On village. The alleged father testified that his brother's oldest son was named Lee Wee, that he was married and his marriage name was Lee Em Loy. Appellant, on the other hand, testified that this cousin had no marriage name, and, although his attention was directed to the fact that his alleged father had testified that Lee Wee had a marriage name, the applicant testified to the contrary.

There was also a discrepancy as to the name of the wife of Lee Wee. The other members of the family testified that her name was Dea Shee, while the applicant testified that her name was Jin Shee.

The alleged father testified that, when he was in China from November, 1927, to June, 1930, he intended bringing the applicant to the United States with him; that the applicant was willing to come with him, and would have come with him if he could have secured passage, that he told the applicant of his plan to bring him to the United States, and, when he found that he could not get passage for him, told him that he would send for him later; that the applicant quit school in 1929 in order to prepare to come to the United

States. The applicant, however, testified that the subject of his coming to the United States was not discussed between them; that his father never expressed any desire or intention of having him come to the United States with him when he last returned, and that he did not quit school on account of the proposed trip to the United States, nor did such trip have any effect upon him in that regard; that he quit school because he did not want to attend any more and that was the only reason.

The alleged father testified to an outside window in each bedroom in the house in China closed by a shutter and iron grating. The appellant, who lived in the house from the time of his birth until he left to come to the United States, testified that there were no windows in the outer walls of the house.

In view of these discrepancies, and notwithstanding the many agreements in the evidence as to the many details upon which the witnesses were questioned by the immigration authorities, we cannot say that the rejection of the testimony was so arbitrary as to have deprived the appellant of a fair hearing.

Order affirmed.